15-1497 National Association of Regulatory Utility Commissioners Petitioner v. Federal Communications Commission, et al. Mr. Ramsey for the Petitioner, Mr. Dunn for the Respondent, and Ms. Bonner for the Intervener. Mr. Ramsey. Good morning. Good morning. With the Federal Telecommunications Law, classifications and definitions matter. The very heart of the 1996 legislation is the FCC's Title II Authority, which only applies to telecommunications service providers. In this case, the FCC has bestowed on so-called interconnected voice over IP, which I'll call interconnected VOIP providers, the benefits of local number portability. But they purport not to classify interconnected VOIP as either a telecommunications service or an information service, but they never explain why. You know we're going to ask you about standing. Sure. Why don't you address that? Oh, standing. Let me say, I understand your brief says it's self-evident. Yes. But, respectfully, I'm not clear why you think that. Well, Your Honor, if you look at the reason for the order is to avoid state certification requirements. Yes. In the order they eliminate state certification requirements. What does that mean? Does it mean the state doesn't get those fees? No, no. What it means is that the only control and the only way that we, states are involved in number portability in a range, and actually the FCC points out that the state involvement has been historically quite important in preventing the exhaust of numbers. We care about area that splits. We've always played that role. The control we have is if there's a number, if the carrier is certified, when they ask for numbers, we know about it. We have more control over what happens there. We get more direct reporting. So... You've lost... Sorry? You've lost virtual control over numbers? Well, there's more than that, but we have less direct control over less direct control and reporting on number exhaust, but that's not all. It's not the only reason why we're impacted here. We're impacted here because the very fact that they have not classified the service impacts a number of state roles under the Act. We're right now at the tail end of... In this order, they remind carriers again, because they're not telecommunications classified, that they have interconnection obligations. See, I understand your argument that's sort of like a parent's patriot in terms of competition, protection of the consumer. Right. But if we're talking about injury in fact, I just need to understand that a little bit more, and maybe you can point me to something. But in your brief, you said it was self-evident, and then in your reply brief, you basically take the same position. Well, I... The injury in fact is that we... The state certification, the only point of control we have in there, that's the self-evident part, is they're removing the state certification requirement, but that's not self-evident. But the injury in fact goes far beyond that. The state role is impacted... In terms of not classifying here, the state role is impacted in a much greater fashion. They're giving them the benefits of Title II classification without requiring them to comply with all the other parts of Title II, and that's in this particular case. And so from the state commission's point of view, it's your loss over control of numbers. That's part of it. Yes, Your Honor. And what's the other part? The other part is the state role in protecting service quality for people that are competing to provide local telecommunications service is different between the two competitors. The carriers have taken positions at the state level, Vonage and others, that they're not subject to state oversight, and that's been a 12-year litigation marathon. When the statute in 153B, 253B, specifies that state authority with respect to service quality, with respect to protecting the public health and safety, is preserved with respect to telecommunications services, even with respect to interstate services. But the statute doesn't say that the FCC gets the final word on this. You're litigating, your theory in those cases is that these are telecommunications providers, right? I'm sorry, can you repeat the question? You said you've been litigating for 12 years. Yes, sir. And there's litigation ongoing right now. That's right. So the failure of the FCC to rule on this doesn't preclude state authority. That in the end will be up to a judge who decides whether or not you have authority, right? In the cases that you're litigating. In the cases that we're litigating, the judges involved there will, but they're influenced by the lack of classification. We have... Well, if the FCC hasn't ruled, then they have nothing to defer to, and they'll decide de novo whether or not, what the classification is, right? Yes, sir. So you're not harmed in that sense. You go to court. If a judge concludes that these are really telecommunications carriers, then you've got your control, right? We don't... Respectfully, in this particular case, in terms of injury, in fact, and in terms of vacating the order, no, we do not. Because they established a federal bypass. So granted, if there's a remand and it's classified as a telecommunications service, they'll have to take another look at that. But no, we have definitively lost a certain measure of control with respect to the designation of numbers. That's clear, no matter which way you cut this. And what role would the state play in the designation of numbers, if there weren't a bypass? The same role that we play right now. We give reports. We keep very close track of how numbers are utilized by the carriers, and we're involved... What's the state interest in... Area code splits. It's a very... You know, HOPCOT members have got death threats over back in the early days, when we were doing splits instead of overlays. It's less common now with overlays, but the state commission... I can hardly tell where the telephone number is coming from now. Everybody seems to carry their number all over the country. Is it still a big issue? With geographic codes, yes, it still is. I would grant you, over time, we will move to a stage where that won't be as significant. But right now, the air carrier... Sites very jealously are concerned about the use of numbers in the numbering system. So the commission argues, with feedback on what the chief judge has been talking about, what you're upset about, as far as this order is concerned, is not the actual outcome of this order, in terms of the bypass, but they argue, or it argues, you're only concerned about the rationale employed to reach that result. I'm concerned about the outcome. You know, it's interesting. The outcome here is, if they classify it as a telecommunication service, they have to go back. The whole rationale for cutting the states out has to be modified to a certain extent. We'll be able to make a different case below. It's not the... I disagree with the whole idea that we're not injured. We're seeking classification. We've been seeking classification in other contexts for years. This is the same thing that happened in the 11th Circuit. In the 11th Circuit, they basically said, we're going to give you access to universal service money if you're not a telecommunications carrier. And then when we challenged them in court, they filed in their brief and said, no, yeah, you have to be designated as an essential telecommunications carrier. That's what happened there. The court basically said, no, you can't have access to this Title II benefit if you're not a Title II carrier. This is the same thing, number portability. And we are impacted across the board by the lack of classification here. We've only come in twice, really, in court where there's been more of a direct impact because we have certified interconnected providers as telecommunications carriers to give them access to universal service money. That happens. And I cited that in the briefs before the In the midst of, again, there are interconnections. We're trying to fulfill our duty to litigate interconnection agreements between competitors. That's one of the duties Congress assigned us. And right now, AT&T, there's a case that went to oral argument this month talking about AT&T saying, well, ISP traffic is not classified. The commission says, we urge you to do it, but it's not classified. Well, it's very hard if you're in federal court and the commission hasn't made a classification to get the court to rule the no vote if the court's saying the issue is outstanding. That's a litigation cost. Yes, it is. But we don't usually regard the fact that you have to litigate your point as enough to create standing. So you have to have something a little bit more than that. I take it the strongest argument I've heard so far is the argument that, with respect to numbering, that the consequences of the FCC has avoided your ability to control numbering. Is that fair with respect to this? Yes, sir. That's your strongest argument. So that's what I want to hear from the other side about. You can go on. Well, in any event, the FCC's case here basically requires them to make, you know, some of the fact that they didn't explain why it was not a telecommunication service. They have, they're basically relying on their plenary authority under 51E1 overnumbering to move forward here, which means they have to make the legal case for you to uphold the order. They have to have made the legal case that the service that's being provided is either a hybrid service or an information service. They're not relying on the fact it's a telecommunication service. And there are five problems with that in the order. The first one is, obviously, they don't even mention ancillary jurisdiction. If this is, in fact, not a Title II service, they don't have to talk about Title I. It's mentioned only in footnote 185 to, I believe, paragraph 43. I may be wrong about that. But it's mentioned only in passing. Now, the FCC did ask about their ancillary jurisdiction in the 2013 National Proposed Rulemaking that took you to this order. In paragraph 85, they specifically asked if granting this porting capability is ancillary to their authority under 251 and 201. But they don't mention it anywhere in the order. The second deficit in the order is that there's no explanation in there at all about the... Well, I thought their argument about their authority comes from their exclusive jurisdiction over the numbering system. Isn't that their argument? That's correct, Your Honor. But for you to uphold them because they have exclusive jurisdiction over numbering, for that to work, you have to have a range of possibilities here. And one of them, for that to work, is that they're not a telecommunication service provider. And if they're not a telecommunication service provider, then you have to discuss ancillary jurisdiction. In fact, every one of the FCC's own prior orders discussing their assertion of authority over void has mentioned and discussed ancillary jurisdiction at length. They did not mention it in this case. And by the same token, there's a prescription against imposing on providers that are not telecommunications, imposing commentary duties like local importability on providers that are not providing telecommunication services in 153 and 51 of the Act that this Court recognized in Verizon v. FCC from 2014. I think it was 740 at 650 in the decision. There's no explanation of that, and I did raise it below. It was brought to their attention. The other deficit that you see in theirs is, and probably the biggest one, is they're relying exclusively on this 251 General Authority, 251E1 General Authority They use their authority there to give definition to number portability rather than looking at the definition that Congress provided in 135, 153, 37. There's a definition there. They mention it in passing, but they never talk about the definition that Congress provided. Now, there's a reason why Congress puts definitions in. Usually, it's constraining the FCC's authority in some way. In other words, I give you a definition so that you can't come up with another one. You can't do what they did in this particular case. They made up their own definition instead of paying attention to the Congressional one. So, your point is that number portability is defined in terms of telecommunication services? Yes. Number portability is defined. And so that limits the FCC's authority to entities providing telecommunication services? Yes. The entire Title II regime is focused on telecommunication services. It's not unusual to think that the North American Numbering Plan and authority overnumbering would be limited to telecommunication services, which if you look at 251E2, it's supposed to say telecommunications carriers shall pay for number portability and number administration. They don't say telecommunications service providers and information service providers and anyone else. The plain text there... As to that, you say the commission as to E2, that the commission overlooks the definition in 51 of who is a telecommunications carrier, which is defined as any provider of telecommunications services. Yes, ma'am. So, those two definitions in 37 and 51 limit the plenary authority under 251E1. That's your argument. And there's no ambiguity. I don't, respectfully, Your Honor. There are three definitions here and the FCC doesn't even discuss them in the order. So, to the extent that there's an ambiguity, there's no discussion. They mention 153, the definition 37, in passing in paragraph 56, 57, but there's no exegesis, if you will, of the definition. And that definition includes two others. They basically come up with their own definition without seriously considering in the order the definition that Congress provided, which presumably would be a limitation on what they could do. So, on your theory, would number portability be limited to local exchange carriers? Yes. I ask that you understand, because 251, the only obligation it discusses is the obligation of local exchange carriers. Yes, Your Honor. Well, certainly, I believe a strict reading of the statute would require that. To the extent that they depart from that, it would have to be a telecommunications service. Well, no, but the question is, can they depart at all? Right. And I take it NARUC's position is not that only LEX can be required to port. Well, number portability is defined in terms of a local... I'm not looking at... I'm looking at 251. No, my position, respectfully, Your Honor, NARUC's position is that a local carrier, which is a local exchange carrier, terminating local calls, would be... No, my position would be that the definition of number portability by itself, which talks about porting your local service from one provider, one local telecommunications service provider, to another local telecommunications service provider, yes, it's limited to local exchange carriers. Those are the only kinds of carriers that can be required to port, are local exchange carriers. Well, if you're going to use the definition of number portability, yes. Well... You have to make up a new definition. It's kind of hard to have the conversation because... Well, is your position that they have to use the definition of number portability? That's correct. So then your position is that only LEX can be required to port. Yes, sir. Not just telecommunications carriers, but specifically only LEX. Yes, sir. And they've only... If you look at the order, if we're talking about CMRS, the CMRS, the Commission has authority to designate them as LEX for purposes of number portability and other Title II provisions. And 332.1c, discussing treatment of them as common carriers, the Congress specifically gave the SEC authority to exempt them from certain provisions. And in the definition section of local exchange carrier, it specifically says you can treat them like a LEX. Now, if they're citing the fact that they didn't actually classify them as a LEX, even though they are a telecommunications service provider, you have to point to the fact that Congress did give them that authority. So them getting... The fact that someone forgot to appeal the fact that they had to be designated as allowed to do this, which was tried, but it was 60 days after the order had gone into place, doesn't change the fact that Congress said... I think you're over-anticipating the argument. I hadn't thought of all that additional material. Oh, okay. Well, I'm way over time here, so I... Thank you. All right, good. Thank you. All right. Mr. Dunn. I think it would help us if you start with Stanley. All right. Good morning, Your Honors. Matthew Dunn for the FCC. I want to jump into standing. As Your Honor indicated, as I believe Judge Garland and Judge Ryders may have indicated, the standing issue, we need to ascertain what NARIC asserts as the harm that its members experience from this order. And I understand there to be two flavors of harm. One is a lack of classifying the service at issue, and one is something to do with numbering. I'll actually start with the second one first. States play little, if any, role in actually assigning numbers. There's a national local number portability administrator and a numbering administrator. So when a provider needs to go and get numbers, they don't need to... In that process, the state is not involved. Counsel for NARIC discussed that states have some oversight of the area codes within their jurisdiction. It seems to be kind of a loose oversight that he described. I'm not sure exactly what the specific mechanics are of how a state would take action to guide whether or not a carrier gets numbers. But to the extent there is something, the Commission has actually anticipated that. So if we look at the order at paragraph 27, excuse me, actually I'll back up a little bit. There's sort of a summary paragraph. It might be easier, which is paragraph 24 on JA-20 and JA-19. So the Commission required VOIP providers to comply with Commission rules related to numbering and also comply with guidelines, and I'm now at the top of page JA-20, comply with guidelines and procedures adopted pursuant to numbering authority delegated to states. So to the extent that states are doing something in this area, VOIP providers still have to comply with that. We can also, and Mr. Ramsey also discussed it, states like to keep a general tab, an eye on number exhaustion on how fast these numbers are being used up. Under this procedure, VOIP providers are actually required to file requests with numbers with state commissions 30 days before they go to get numbers, which is actually 30 days more notice than they would have had under the previous regime. So to the extent that there's some kind of state role to play with regard to numbers. Is there confusion about whether there is a state role or not? I mean, I would have thought the FCC would know whether the state has a role in area code splitting,  For example, states get to decide whether or not areas in that area code will be split into 1,000 blocks instead of 10,000 blocks. It's a way to cut the numbers up into smaller chunks so that they exhaust more slowly. So states do have ability there. They have some oversight over number reclamation, which is when an entity is not using the numbers. They can go to the entity. Are all these things preserved by the provisions of paragraph 24 that you're just reading? That's certainly the way I would understand the order. And there's nothing in the order below or, as I understand it, in NARIP's brief to contradict that. And the bypassing of state certification, what impact does that have? It is true that the point of the order is that VOIP entities can get numbers without certification. So that's certainly true. But the question is what harm follows from that, and that's not what's clear to me from NARIP's brief. And so the state certification would have been what? So before the order, in order to get telephone numbers, an entity would have to show that it's able to provide service, and to do that it would need to show a state certification of convenience and necessity. And it's true that that's no longer necessary. So that's the concern expressed about consumer protection? No, I'm not exactly sure what that concern is, Your Honor. To be frank, and I invite counsel for NARIP to explicate that. I would assert it should have come up in an opening brief. It's true that state commissions can still play a role in consumer protection. It's not clear to me what the nexus is with numbering there. To the extent that a party wanted to maybe here we're getting into the second locus of harm asserted into general lack of classification. NARIP points to a number of things it can do with telecommunications entities that it can't do with VOIP because it's not classified as a telecommunications carrier. Excuse me. So some of those things are arbitrating interconnection disputes and general consumer protection through the state utility regulator. I would just assert that all of those harms seem to be separate for me, as I understand them, from numbering, what actually happened in this order, which is giving access to telephone numbers and maintaining number portability. So if there's a harm related that NARIP asserts it's not able to implement consumer protection in the way it would like or its members are not able to in the way it would like, any such harm stems from the fact that the VOIP service is not classified as a telecommunications service. It doesn't really have anything to do with giving these entities access to numbers. So we would assert that just for the purpose of this argument, we would concede that may be a harm, but it doesn't stem from this order. Is that onstanding? It sounded like Your Honors generally understood our position on authority under the statute. What about their argument focused on an oral argument about not referring to ancillary jurisdiction? I'm sorry. Not referring to ancillary jurisdiction of the FCC. Right. It's true we did not rely on ancillary jurisdiction, but I don't think that's an infirmity in the statute if the jurisdiction that we did rely on is, excuse me, an infirmity in the order if we did rely on valid authority. If I may speak loosely, it seems as though there's been a general dialogue over time between the FCC and this Court about how much to rely on ancillary jurisdiction, and these days the signal seems to be if we don't need it, we shouldn't rely on it. And if that's true, then we've been just trying to follow your instruction. Reading our smoke signals, scientists. All right. Fair enough. Fair enough. So the statute says what it says. I see some other FCC lawyers in the audience. I'm sure that's what they think. Right, right. The statute gives us exclusive jurisdiction over numbers. We think it makes sense that that includes who gets numbers and when they have to give up the numbers so they can follow the customer. So what about the definitional argument? So number portability is defined in the statute dealing with telecommunications carriers. I think that's not surprising because the only place that the definition is used in the entire act is in 251. And 251B requires local exchange carriers to provide number portability. So the term is used, is defined in a way that's naturally flows from the way the term is used. I think what NARUC has to show is that that definition necessarily limits the commission's authority to make a similar requirement of other entities. And I would assert there's not a good reason for such an interpretation, especially in a pro-competitive act like the 96 Act. So Congress wrote that for purposes of this chapter, unless the context otherwise requires, here's what these terms mean. So it defines telecommunications carriers specifically. And why does that mean the commission didn't use them? Sorry, it defines number portability or it defines a telecommunications carrier? Both. It defines telecommunications carrier in some paragraph. It certainly does, but the commission's position is that it's not treating void providers in a way that is necessarily limited to telecommunications carriers. Right. So I don't think that that does work for NARUC. I understand their position to be number portability is defined in terms of telecommunications carriers. But I don't think it follows from that that only telecommunications carriers can be required to provide a similar kind of portability. In other words, I think that that definition, which is used for a specific purpose, has to do an awful lot of work for NARUC to unambiguously forbid the commission from making that kind of requirement. So I agree as to E1. What about E2 on cost? Right. So this – let me just pull that up, sorry. So, again, this – In other words, as I read it initially, I thought, well, the only people who have to pay these costs are telecommunications carriers. Right. They're defined. Right. To be sure, we're not trying to include void carriers within telecommunications carriers. So the way the commission reads this is this is a floor. These entities definitely must bear these costs. But it doesn't – I think it's at least ambiguous whether or not the commission can also require other kinds of entities to bear these costs, as it did. And this actually is not from this order. This came up in 2007 when the commission first required void providers to share in the costs of number portability and numbering administration. Was there a resistance by any of the voids? A legal – it wasn't appealed. No. That was because of the timing problem. Right. There was kind of a – we're not relying on some – this is barred or anything of the like. I just mean to establish that the agency has been consistent in the way it's interpreted the statute for 10 years. Further questions? Further questions? Thank you. Thank you, Your Honors. I think we have the intervener first. Good morning, Your Honor. Austin Bonner for Bonage, the interveners. We agree with the FCC's conclusion that its plenary authority in 251E1 provides ample justification for this order. And so I want to just add two points about the justiciability of this case. The first is in trying to discern what the basis for NARUC standing is. I think we need to look at what the status quo was before the order. And states had largely no control over void providers. State jurisdiction over void had been preempted for a long time, and void providers participated in the numbering system without any state oversight. I understand from NARUC's reply brief that they think that there's a role in exhaustion that might have been affected by this order. We don't think that that's the case, largely because they presented that problem to the commission, and the commission solved it. Our company, Bonage, is required to provide the kind of exhaustion reports and the notification that allows the state to continue to draw the reports in the numbering administrator and to monitor exhaustion. To the extent that there was ever a problem on that front, we just don't think it's an injury that should be recognized here. That's in which order requires exhaustion? In this order? This order. So there's a discussion that Mr. Dunn pointed to that requires both. You're talking about paragraph 24. That's right. Additionally, we think much of what NARUC has presented today are problems that the commission has solved and interpretations that they made in 2007. So the discussion about number portability that you've heard today, I think it's important to understand that Bonage and other void providers have had numbering responsibilities and have paid for the system since 2007. And in the 2007 order, the commission says, we understand our 251E1, that plenary authority, to provide all the authority we need to impose these requirements on void providers. Let me ask you about the question that Judge Rogers was asking, that is E2. Do you agree then that notwithstanding the fact that it said costs will be borne by all telecommunications carriers, that iVoIPs have to bear the costs regardless of whether or not they are telecommunications carriers? That's right. And Interconnected VoIP has borne those costs for a number of years. Right. But I just want to be sure. So Bonage is giving up any possibility of arguing in the future that it doesn't have to bear the costs because it's not a telecommunications carrier? We understand that to be a decision that was made a long time ago, and we've paid those costs since 2007. And will continue? Yes. If there are no further questions, I think that's all that we have. And we'd ask that you affirm the FCC. I appreciate it. You are the first intervener who has actually restricted herself to three minutes. And we're going to be citing that as a precedent here. All right. Mr. Ramsey, does he have any time left? All right. But it's all right. She only took three. I mean, she took less than three, and the FCC took less than the full time. So you have two minutes left. Well, you're very kind, Your Honor. Thank you. Your comments are very kind. I don't know. In terms of jurisdiction. What about paragraph 24? What about the argument that you've been protected? I'm sorry. Maybe this mic isn't working very well. What about the argument that your authority with respect to numbering, whatever it is, has been preserved? I'm sorry. Repeat, sir. I asked them, what about the state's authority over numbering, and was it injured in any way? Their response was, whatever authority you had was protected by paragraph 24 of the order. Well, respectfully, at least my members did not agree with that statement. They filed, you know, I will confess that I have not spent enough time on the number portability side of the issue. But I know that my members weren't happy with the result. And I do want to point out in terms of standing, NAICS is not like another petitioner. We're actually have a charge along with the FCC of enforcing the Telecommunications Act. That's a very unusual situation. We're not just a third party standing out there. We're supposed to be enforcing the interconnection obligations under 251 and 252. That's a charge that we're given. And that's directly impacted by this. I also would note that in terms of injury, in fact, there are some carriers that provide service using interconnected VOIP. In fact, they're interconnected VOIP providers that have qualified basically as telecommunications service providers because they get universal service money. And by the same token, their providers, in fact, many of the providers that under the old regime these carriers got numbers from, also provide service using interconnect, this technology, interconnected VOIP. So what this does is it allows, it's not that a carrier like Vonage can't come into many states, and I would suggest at least half and probably more, and say, hey, we want to be certificated as a carrier because they qualify under the state definition and the FCC hasn't ruled it out. They can. But this means that there's no longer any impetus for them to do so. And that was left in place under the old regime. If this order is vacated, we go back, and the states are able to fully protect the consumers of their jurisdiction, respectively as carriers. Okay, further questions? I'm out of time. It's all right. Thank you. All right, we appreciate the arguments of both sides. We'll take the matter under submission. We'll move on to the next case.
judges: Garland, Henderson, Rogers